UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------ X
GBML LLC,

                    Plaintiff,

     -against-

M2B INVESTORS, LTD. and WALL STREET
MORTGAGE BANKERS, LTD. d/b/a POWER
EXPRESS MORTGAGE,

                    Defendants.
------------------------------------------------------------ X

Docket No.

**COMPLAINT**

*Jury Trial Demanded*

Plaintiff GBML LLC, by its attorneys, HELD & HINES, LLP, as and for its Verified Complaint, herein alleges:

## PRELIMINARY STATEMENT

1. This action arises out of a Contract of Sale whereby defendant M2B Investors, Ltd. agreed to sell and the Plaintiff agreed to purchase real property located at 4813 and 4815 Avenue N, Brooklyn, New York 11234 for the purchase price of $1,700,000. The contract was signed by Plaintiff and defendant M2B Investors, Ltd. Pursuant to the Contract of Sale, Plaintiff was required to apply for and receive a mortgage from co-defendant Wall Street Mortgage Bankers, Ltd., a company co-owned by the principals of defendant M2B Investors, Ltd . Plaintiff did apply for and receive a mortgage commitment from defendant Wall Street Mortgage Bankers, Ltd.; however, despite the defendants' own appraiser and Wall Street Mortgage Bankers, Ltd. receiving a counter-signed copy of the Contract of Sale, defendant M2B Investors, Ltd. failed to provide Plaintiff with same. The defendants' scheduled a closing for April 1, 2022. Two days before the closing date, defendant M2B Investors, Ltd. got cold feet and refused to close title.

2. Defendant Wall Street Mortgage Bankers, Ltd. refused to provide Plaintiff with a copy of the Closing Disclosure Form and/or a proper Commitment Letter upon demand for same. Defendant Wall Street Mortgage Bankers, Ltd. did eventually provide Plaintiff and co-defendant with a purported Mortgage Commitment Letter, more than a week after the scheduled April 1, 2022 closing date, but the commitment letter was devoid of material terms, including the interest rate on the mortgage.

## **PARTIES**

3. At all times hereinafter mentioned, Plaintiff GBML LLC was and is a domestic limited liability company existing by virtue of the laws of the State of New York, with its principal place of business located at 2004 Ralph Avenue, Brooklyn, New York 11234.

4. Defendant M2B Investors, Ltd. was and is a domestic corporation existing by virtue of the laws of the State of New York, with its principal place of business located at 4815 Avenue N, Brooklyn, New York 11234.

5. Defendant M2B Investors, Ltd. owns real property in Kings County, New York, including the subject premises located at 4813 and 4815 Avenue N, Brooklyn, New York 11234.

6. Upon information and belief, Abraham Podolsky was and is the Chief Executive Officer of Defendant M2B Investors, Ltd.

7. Defendant Wall Street Mortgage Bankers, Ltd . was and is a domestic corporation existing by virtue of the laws of the State of New York, with its principal place of business located at 1010 Northern Boulevard, Suite 336, Great Neck, New York 11021, which is engaged in the business of, *inter alia*, making mortgage loans.

8. Defendant Wall Street Mortgage Bankers, Ltd. routinely transacts business in Kings County, New York and maintains an active branch office at 4907 Avenue N, Brooklyn, New York 11234.

9. Defendant Wall Street Mortgage Bankers, Ltd. operates and does business under numerous other trade names, including but not limited to "Power Express Mortgage."

10. At all times alleged herein, Defendant Wall Street Mortgage Bankers, Ltd. was and is a New York-licensed mortgage banker (NMLS #1324).

11. Upon information and belief, Keith Kantrowitz was and is the Chief Executive Officer of Defendant Wall Street Mortgage Bankers, Ltd.

12. Upon information and belief, Abraham Podolsky, Chief Executive Officer of defendant M2B Investors, Ltd.., had and still has a financial and other beneficial interest in co-defendant Wall Street Mortgage Bankers, Ltd.

13. Upon information and belief, Keith Kantrowitz, Chief Executive Officer of defendant Wall Street Mortgage Bankers, Ltd., had and still has a financial and other beneficial interest in co-defendant M2B Investors, Ltd.

## JURISDICTION AND VENUE

14. This Court has subject matter jurisdiction over Plaintiff's federal claims pursuant to 28 U.S.C § 1331, §1343, 12 U.S.C. §2607, and 12 C.F.R. § 1026.

15. This Court has supplemental jurisdiction over Plaintiff's pendent state law claims pursuant to 28 U.S.C § 1367.

16. Venue is proper in this judicial district pursuant to 28 U.S.C § 1391(b) because the subject property is located in the Eastern District of New York and a substantial portion of the events giving rise to this complaint occurred within the Eastern District of New York.

## FACTS COMMON TO ALL CLAIMS

17. Following several months of extensive negotiations, on or about February 15, 2022, Plaintiff (hereinafter "Buyer") entered into a Contract of Sale (hereinafter "Contract") to purchase from Defendant M2B Investors Ltd. (hereinafter "Seller") the real property located at 4813 and 4815 Avenue N, Brooklyn, New York 11234 (hereinafter "Subject Premises").

18. Pursuant to the Contract, the Seller agreed to sell and the Plaintiff agreed to purchase the Subject Premises for a purchase price of One Million Seven Hundred Thousand ($1,700,000.00) U.S. Dollars (the "Purchase Price"). No down payment was required.

19. The Seller agreed to deliver the Subject Premises, including the basement, broom clean and to seal off an open passageway between 4815 Avenue N, Brooklyn, New York (part of the Subject Premises) and 4817 Avenue N, Brooklyn, New York, which property is also owned by Seller.

20. Prior to, and in anticipation of, the closing of title, Seller did remove hundreds of boxes and other elements from the basements of the Subject Premises and did close the passageway between 4815 Avenue N, Brooklyn, New York (part of the Subject Premises) and 4817 Avenue N. Brooklyn, New York, in partial performance of the Contract. Seller also made repairs and remediation measures of issues delineated on the engineer/inspection report. Seller also allowed the engineer/inspector, appraiser, surveyor, contractors, and Plaintiff access to the Subject Premises on multiple occasions and notified its staff that the Subject Premises were being sold to the plaintiff.

21. The Contract was contingent upon Plaintiff securing a mortgage commitment from Defendant Wall Street Mortgage Bankers, Ltd. d/b/a Power Express Mortgage (hereinafter

"Lender") which, upon information and belief, is partially owned and controlled by the principal(s) of Defendant Seller, namely Abraham Podolsky.

22. Plaintiff promptly applied for said mortgage seeking 75% financing and was duly diligent and fully cooperative with the application and underwriting process. To wit, a firm mortgage commitment in the amount of One Million Two Hundred and Seventy-Five Thousand ($1,275,00.00) Dollars was obtained by Plaintiff from Defendant Lender.

23. Pursuant to the Contract, Seller had promised Plaintiff that the mortgage loan rate would be locked in firmly at 4 ¾ %, but then verbally altered the rate to 5 ⅜ %.

24. Shortly after Plaintiff applied for the mortgage with defendant Lender, said defendant advised Plaintiff that it would not be able to honor the 4 ¾ % interest rate negotiated in the Contract and stated the best rate possible at that time would be 5%.

25. Defendant Lender failed to issue a locked-in loan commitment, although it represented to Plaintiff that it had locked in a rate of 5%.

26. In further performance under the Contract, Plaintiff conducted, with the expressed knowledge and assent of Seller, an engineer's inspection, an appraisal, and a survey. In fact, it was defendant Lender, working with co-defendant Seller, that recommended and hired the appraiser and surveyor on behalf of Plaintiff. Plaintiff paid for these services directly to Defendants' appraiser and surveyor.

27. Pursuant to the Contract, Plaintiff provided the engineer's report, appraisal report, and survey to Defendants.

28. The appraisal report expressly states that "There is currently a *fully executed* [emphasis added] sales contract in place for the subject, dated 2-22-2022 for $1,700,000 between the seller: M2B Investors Ltd. And [sic] GBML LLC."

29. Pursuant to the Contract, title closing was scheduled to take place on or about April 1, 2022.

30. On or about April 1, 2022, Seller did willfully refuse to proceed to closing on the Subject Premises and has refused to close title to date. No reason has been given for said refusal and, upon information and belief, Seller has no intention to proceed to closing in the future.

31. Following Seller's stated refusal to close title, Seller offered to reimburse Plaintiff's expenses incurred in the doomed transaction; however, Seller has failed to reimburse Plaintiff for any losses or expenses related to the subject transaction.

32. Plaintiff has communicated with Seller concerning the above state of affairs, without receiving any meaningful response.

33. Seller is in breach of the Contract and other agreements with Plaintiff.

34. Seller has willfully refused to cure the breach of Contract and other agreements with Plaintiff.

35. Seller has impermissibly and without reason or justification breached the Contract by willfully refusing to close title on the Subject Premises, despite full performance by Plaintiff and partial performance by Seller and Lender.

36. Plaintiff remains ready, willing, and able to close title pursuant to the terms of the Contract.

37. Both Defendants have willfully breached the portion of the Contract requiring a mortgage loan rate of 4 ¾ %. No reason has been given for said breach.

38. Upon information and belief, Defendants do not intend to honor the requisite mortgage loan rate of 4 ¾ %.

39. Plaintiff has communicated with Defendant Lender, through its principal Keith Kantrowitz and agents, concerning Lender's failure to deliver and lock-in the promised mortgage loan rate of 4 ¾ %, without receiving any meaningful response.

40. Defendants are in breach of contract for failing to deliver a mortgage commitment at 4 ¾ %.

41. Defendants have willfully refused to cure the breach by locking-in a mortgage loan rate of 4 ¾ % and issuing a commitment for same.

42. Defendants have impermissibly and without reason or justification breached the Contract by willfully refusing to lock-in the mortgage loan rate at 4 ¾ %, despite full performance by Plaintiff.

43. As Plaintiff's good faith attempts to close title pursuant to the terms of the Contract have been willfully frustrated, rejected, and ignored by Defendants, as have been Plaintiff's good faith attempts to resolve the issue of the lock-in rate, the within lawsuit ensues.

**AS AND FOR A FIRST CAUSE OF ACTION AGAINST BOTH DEFENDANTS
FOR SPECIFIC PERFORMANCE**

44. Plaintiff repeats and reiterates each of the above numbered paragraphs as if fully set forth herein.

45. Plaintiff is ready, willing, and able to close title on the Subject Premises pursuant to the terms of the Contract.

46. Defendants have repeatedly and willfully refused to comply with the terms of the Contract.

47. The Subject Premises are a unique property.

48. The Subject Premises' location, condition, and floorplan cannot be replaced with another property.

49. Plaintiff cannot be adequately compensated for the loss of the Subject Premises by monetary damages if the Defendants refuse to honor the Contract and close title to the Subject Premises.

50. Plaintiff does not have an adequate remedy at law.

51. Due to the foregoing, Plaintiff is entitled to a judgment of this Court granting the Plaintiff specific performance with respect to closing on the Subject Premises.

52. Due to the foregoing, Plaintiff is entitled to a judgment of this Court granting the Plaintiff specific performance with respect to a mortgage loan rate of 4 ¾ %.

53. Defendants should be directed to set a closing date for the sale of the Subject Premises and to convey the Subject Premises to Plaintiff in full compliance with the Contract.

### AS AND FOR A SECOND CAUSE OF ACTION AGAINST BOTH DEFENDANTS FOR BREACH OF CONTRACT

54. Plaintiff reiterates and realleges each of the above numbered paragraphs as if fully set forth herein.

55. As set forth above, Defendants have willfully and materially breached the Contract and their other agreements with Plaintiff

56. Defendants have willfully and materially defaulted under the Contract and their other agreements with Plaintiff.

57. Plaintiff has fulfilled its obligations pursuant to the Contract necessary to close title.

58. Due to the foregoing, and in the event that specific performance is not granted, Plaintiff is entitled to an award of monetary damages, attorney's fees, expenses, and costs in an amount to be determined by the trier of fact.

### AS AND FOR A THIRD CAUSE OF ACTION AGAINST BOTH DEFENDANTS FOR FRAUD

59. Plaintiff repeats and realleges each of the above numbered paragraphs as if fully set forth herein.

60. Defendants committed numerous acts of fraud, concealment, and intentional omissions.

61. Throughout the day-to-day communications between Plaintiff and Defendants in moving the transaction forward, Defendants regularly and routinely stated and indicated by their actions that they intended to close title on the Subject Premises. In fact, it was not until defendant Lender advised Plaintiff and Seller, on or about March 30, 2022, that the closing would need to occur by April 1, 2022 that Seller stated it would not be willing to close title.

62. Defendant Lender failed to provide Plaintiff with a standardized Closing Disclosure at least 3 business days before the closing.

63. Defendant Lender failed to provide Plaintiff with the material terms of the mortgage, including but not limited to the interest rate on the mortgage.

64. Defendants failed to disclose in writing the financial and ownership relationships between the principals of the defendants acting as lender, broker, and seller.

65. Defendants failed to disclose in writing that the principals of the defendants owned both the Subject Premises and the lending institution.

66. Plaintiff did not learn of the financial and other beneficial interests the defendants and/or their principals had with each other until after the date upon which the closing was to occur.

67. Defendant Lender failed to disclose that they only lend on residential properties and that it does not handle properties that may be considered commercial or mixed-use property.

68. Defendant Lender intentionally kept changing the purported "locked-in" mortgage interest rate so as to better reward themselves as the lender.

69. Defendants changed the conditions set forth in the commitment letter as a pretext to getting out of the Contract and/or loan commitment.

70. Defendants intentionally failed to deliver the Contract of Sale to Plaintiff, which it counter-signed, in order to take advantage of Plaintiff and hold it hostage to predatory terms and conditions.

71. Defendants failed to disclose conflicts of interest in acting as the owner of the Subject Premises and the lender for Plaintiff.

72. Defendants never received a waiver from Plaintiff as to their inherent conflicts of interest in the instant matter.

73. Defendant Seller did not intend to close title on the Subject Premises at the inception of the Contract.

74. Defendant Seller did not intend to close title on the Subject Premises at any time prior to it refusing to close on or about April 1, 2022.

75. Plaintiff expended significant sums of money for an appraisal, survey, title, engineering report, loan application fees, rate-lock fees, rate-lock extension fees, and other items, in reliance upon Seller's representation that it was ready, willing and able to close on the Subject Premises in a timely fashion and in accordance with the Contract.

76. Seller misrepresented to Plaintiff that it intended to and was capable of closing title on the Subject Premises in accordance with the terms of the Contract.

77. Defendant Seller knew of the falsity of the above-mentioned misrepresentations to Plaintiff as evidenced by their sudden, unwarranted, and unexplained refusal to close title on the Subject Premises.

78. Defendant Seller intended to induce the reliance of the Plaintiff upon the above-mentioned misrepresentations by way of their entering into a Contract with Plaintiff.

79. Plaintiff justifiably relied upon the above-mentioned misrepresentations of Seller by virtue of the Contract into which they had entered.

80. Defendants concealed their wrongdoing from Plaintiff and never revealed it to Plaintiff.

81. The above constitutes fraud on the part of Defendants, individually and collectively.

82. Defendants did not intend to lock-in the mortgage loan rate at 4 ¾ % at the inception of the Contract.

83. Defendants did not intend to lock-in the mortgage loan rate at 4 ¾ % at any time prior to Seller refusing to close on or about April 1, 2022.

84. Plaintiff expended sums of money for an appraisal, survey, title, engineering report, loan application fees, rate-lock fees and other items, in reliance upon Defendants' representations that they were ready, willing, and able to close on the Subject Premises at a locked-in rate of 4 ¾ % and in a timely fashion accordance with the Contract.

85. Defendant Lender misrepresented to Plaintiff that it intended to and was capable of closing on the Subject Premises at a locked-in rate of 4 ¾ % in accordance with the terms of the Contract.

86. Defendants knew of the falsity of the above-mentioned misrepresentations to Plaintiff as evidenced by their sudden, unwarranted, and unexplained refusal to close on the Subject Premises at a locked-in rate of 4 ¾ %.

87. Defendants intended to induce the reliance of the Plaintiff upon the above-mentioned misrepresentations by way of their entering into a Contract with Plaintiff.

88. Plaintiff justifiably relied upon the above-mentioned misrepresentations of Defendants by virtue of the Contract into which they had entered.

89. Defendants concealed their wrongdoing with respect to the rate lock from Plaintiff and never revealed it to Plaintiff until after Seller refused to close title.

90. The above constitutes fraud on the part of both defendants.

91. Due to the foregoing, Plaintiff has been damaged and is entitled to an award of monetary damages, attorney's fees, expenses, and costs in an amount to be determined by the trier of fact.

### AS AND FOR A FOURTH CAUSE OF ACTION AGAINST BOTH DEFENDANTS FOR MISREPRESENTATION

92. Plaintiff repeats and realleges each of the above numbered paragraphs as if fully set forth herein.

93. A special, privity-like relationship existed between Defendants and Plaintiff by virtue of the Contract among them, imposing a duty upon Defendants to impart correct, truthful, and honest information to Plaintiff.

94. As set forth above, Defendants made a number of misrepresentations and omissions of material facts to the Plaintiff.

95. Defendant Seller consistently, on countless occasions, knowingly misrepresented to Plaintiff that it was ready, willing, and able to close title on the Subject Premises.

96. Defendants consistently, on countless occasions, knowingly misrepresented to Plaintiff that it was ready, willing, and able to close title on the Subject Premises in accordance with the terms of the Contract, including at a locked-in rate of 4 ¾ %.

97. Defendant Lender knowingly misrepresented to Plaintiff that it was able to deliver and lock-in a mortgage interest rate of 4 ¾ %.

98. Defendant Lender knowingly misrepresented to Plaintiff that it was able to deliver and lock-in a mortgage interest rate of 5 %.

99. Defendant Lender knowingly misrepresented to Plaintiff that it was able to deliver and lock-in a mortgage interest rate of 5 ⅜ %.

100. Defendant Lender knowingly misrepresented to Plaintiff that it was able to deliver and lock-in a mortgage interest rate of 5 ½ %.

101. Plaintiff reasonably relied upon Defendants' representations, including but not limited to those alleged herein, to its detriment.

102. The above constitutes misrepresentation of material facts on the part of Defendants.

103. Due to the foregoing, Plaintiff has been damaged and is entitled to an award of monetary damages, attorney's fees, expenses, and costs in an amount to be determined by the trier of fact.

**AS AND FOR A FIFTH CAUSE OF ACTION AGAINST BOTH DEFENDANTS FOR BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING**

104. Plaintiff repeats and realleges each of the above numbered paragraphs as if fully set forth herein.

105. Every contract executed or performed in the State of New York, whether written or oral, explicit or implied, includes an implied covenant of good faith and fair dealing.

106. By virtue of the conduct described above, Defendants acted in bad faith in that their actions injured Plaintiff, depriving Plaintiff of the benefits of the Contract and loan.

107. By virtue of the conduct described above, Defendants breached the covenant of good faith and fair dealing.

108. Due to the foregoing, Plaintiff has been damaged and is entitled to an award of monetary damages, attorney's fees, expenses, and costs in an amount to be determined by the trier of fact.

## AS AND FOR A SIXTH CAUSE OF ACTION
## AGAINST DEFENDANT M2B INVESTORS LTD. FOR UNJUST ENRICHMENT

109. Plaintiff repeats and realleges each of the above numbered paragraphs as if fully set forth herein.

110. Defendant Seller has reaped the benefit of an engineering report, for which Plaintiff has paid.

111. Defendant Seller has reaped the benefit of an appraisal, for which Plaintiff has paid.

112. Plaintiff made payment for the appraisal to MB Appraisal, Inc., which was owned and controlled by Defendant Seller.

113. Defendant Seller has reaped the benefit of a land survey, for which Plaintiff has paid.

114. Defendant Seller has reaped the benefit of a title report, for which Plaintiff has paid.

115. It is against equity and good conscience for Defendant Seller to retain said enrichment, namely, an engineering report, an appraisal, and a land survey, which enrichment was obtained by fraud and misrepresentation.

116. The above constitutes unjust enrichment on the part of Defendant Seller.

117. Due to the foregoing, Plaintiff has been damaged and is entitled to an award of monetary damages, attorney's fees, expenses, and costs in an amount to be determined by the trier of fact.

**AS AND FOR A SEVENTH CAUSE OF ACTION AGAINST BOTH DEFENDANTS FOR VIOLATIONS OF THE REAL ESTATE SETTLEMENT PROCEDURES ACT, 12 U.S.C § 2601,** *et seq.*

118. Plaintiff repeats and realleges each of the above numbered paragraphs as if fully set forth herein.

119. The subject mortgage loan was to be secured by the Subject Premises – a mixed-use property comprising of four residential units and two commercial units.

120. The mortgage loan was subject to the Real Estate and Settlement Procedures Act ("RESPA"), 12 U.S.C. §§ 1261 *et seq.*, which required Defendants, as lender, mortgage broker, and the servicer of the loan to provide disclosures to Plaintiff concerning real estate transactions, settlement services, and consumer protection laws.

121. Defendants share common officers, including but not limited to Keith Kantrowitz, Abraham Podolsky, and are otherwise financially intertwined and/or related in interest.

122. Defendants violated RESPA as they:

   a. Intended to give a portion, split, or percentage of charges made or received for the rendering of a real estate settlement service in connection with a transaction involving a federally regulated mortgage loan other than for services actually performed, in violation of 12 U.S.C. § 2607 and 24 C.F.R. §3500.14(c);

   b. Failed to provide Plaintiff with the required disclosures prior to the consummation of the transaction, in violation of 12 U.S.C. § 2607;

c. Failed to make the required disclosures clearly and conspicuously in writing. in violation of 12 U.S.C. § 2607;

d. Failed to properly and accurately disclose the amount financed, in violation of 12 U.S.C. § 2607;

e. Failed to properly and accurately disclose the amount of any finance charge fees payable to third parties that were not bona fide or reasonable in amount, in violation of 12 U.S.C. § 2607;

f. Failed to disclose clearly and conspicuously in writing the interest charged on the mortgage;

g. Failed to disclose the total amount of payments charged to the Defendant over the life of the loan;

h. Failed to disclose to Plaintiff the correct status of the loan via Lender's web portal and in communications with Plaintiff;

i. Failed to disclose to Plaintiff that a commitment was issued;

j. Failed to properly reflect the correct type of property in the mortgage application;

k. Failed to properly reflect the correct type of property in the commitment letter;

l. Failed to properly reflect in the commitment letter that the Plaintiff was purchasing two separate properties and they were not legally combined; and

m. Intentionally added conditions to the commitment letter as a pretext to get out of the Contract of Sale.

123. To the extent Defendants each failed to make the disclosures required by RESPA to Plaintiff, including 12 U.S.C. § 2607(c)(4), such that when a settlement service provider

involved in a RESPA-covered transaction refers the borrower to a provider with whom the referring party has an ownership or other beneficial interest, a Controlled Business Arrangement (CBA) Disclosure is required, the Defendants are in violation of RESPA.

124. By virtue of the failure of Defendants to expressly describe the business arrangement that exists between the two and give Plaintiff an estimate of charges, Defendants are in violation of RESPA.

125. By virtue of the requirement by Seller that Plaintiff use Defendant Lender to secure a mortgage loan commitment, the Seller is in violation of RESPA.

126. By virtue of the failure of Defendant Lender to provide a definite interest rate and term of loan, the defendants are in violation of RESPA.

127. Defendants are liable to Plaintiff for actual damages, trebled damages, costs and disbursements, and attorney's fees.

### AS AND FOR AN EIGHTH CAUSE OF ACTION AGAINST DEFENDANT WALL STREET MORTGAGE BANKERS, LTD. FOR VIOLATION OF TRUTH IN LENDING ACT, REGULATION Z, 12 C.F.R. § 1026

128. Plaintiff repeats and realleges each of the above numbered paragraphs as if fully set forth herein.

129. Defendant Wall Street Mortgage Bankers, Ltd., as a lender, is required to comply with 12 CFR § 1026.

130. Defendant Lender was required to deliver to Plaintiff a Loan Estimate or place same in the mail to Plaintiff no later than the third business day after receipt of the consumer's "application" for a mortgage loan subject to the TRID Rule, 12 C.F.R. §1026.19. Defendant Lender failed to do so.

131. Defendant Lender also failed to make the disclosures clearly and conspicuously in writing, in a form that the consumer Plaintiff may keep, in violation of the TRID Rule, 12 C.F.R. §1026.19.

132. Defendant Lender failed to disclose the mortgage interest rate, costs at closing, taxes, insurance and assessment costs, projected range of payments, and loan terms, in violation of in violation of the TRID Rule, 12 C.F.R. §1026.

133. On March 30, 2022, Defendant Lender informed Plaintiff that it had cleared the file to close and that the closing would have to take place no later than Friday April 1, 2022, or the rate lock would end. Notwithstanding the late notice, Plaintiff was ready, willing, and able to close title on April 1, 2022.

134. Up to and including March 30, 2022, Defendant Lender never provided Plaintiff with a commitment letter, never indicated when the rate lock would end, and never put into writing any terms of the mortgage.

135. Defendant Lender did not provide Plaintiff with the standardized Closing Disclosure within three days prior to the April 1, 2022 closing date.

136. Defendant Lender has never provided Plaintiff with the standardized Closing Disclosure.

137. Defendant Lender violated the TRID Rule, 12 CFR §1026.19(e)(1)(iii).

138. Defendant Lender violated Regulation Z of the Truth and Lending Act.

139. Defendant Lender is liable to Plaintiff for actual and statutory damages, interest, statutory interest, costs and disbursements, and attorney's fees.

## JURY DEMAND

Plaintiff hereby demands a trial by jury of all issues in this matter.

**WHEREFORE**, Plaintiff demands judgment be entered against Defendants, jointly and severally, as to each of the causes of action set forth herein, together with any and all further relief that this Court deems just and proper.

Dated: Brooklyn, New York
       May 26, 2022

                                        Yours, etc.,

                                        HELD & HINES, L.L.P.

                                        */s/ Philip M. Hines*_____
                                        By: Philip M. Hines, Esq.
                                        *Attorneys for Plaintiff*
                                        2004 Ralph Avenue
                                        Brooklyn, New York 11234
                                        (718) 531-9700
                                        phines@heldhines.com