UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------- X

GBML LLC,

                                              22-cv-03138 (RPK)(RLM)

                Plaintiff,

     -against-                          **AMENDED COMPLAINT**

M2B INVESTORS LTD. and WALL STREET
MORTGAGE BANKERS LTD. (d/b/a POWER
EXPRESS MORTGAGE),

                Defendants.
------------------------------------------------------------- X

      Plaintiff GBML LLC, by its attorneys, HELD & HINES, LLP, as and for its Verified

Complaint, herein alleges:

**PRELIMINARY STATEMENT**:

      1.     This action arises out of a contract of sale whereby Defendant M2B Investors, Ltd

agreed to sell and the Plaintiff agreed to buy the properties located at 4813 and 4815 Avenue N,

Brooklyn, New York 11234 ("subject premises") for the purchase price of $1,700,000.00. Under

the contract, the Plaintiff was required to apply for a loan with Co-Defendant Wall Street Mortgage

Bankers Ltd., a company co-owned by the principals of Defendant M2B Investors, Ltd. Plaintiff

and non-party Philip Hines did apply for and did receive a mortgage commitment from Defendant

Wall Street Mortgage Bankers, Ltd. Defendant Wall Street Mortgage Bankers Ltd. scheduled a

closing for April 1, 2022. Two days before the closing date, Defendant M2B Investors, Ltd. got

"cold feet" and refused to close title.

      2.     Defendant Wall Street Mortgage Bankers, Ltd. refused to provide Plaintiff with a

copy of the Lending Disclosure, Closing Disclosure Form and/or a proper Commitment Letter

upon demand for same. Defendant Wall Street Mortgage Bankers, Ltd. did eventually provide

Plaintiff and co-defendant with a purported residential Mortgage Commitment Letter, more than a week after the scheduled April 1, 2022 closing date, but the commitment letter was devoid of material terms, including the interest rate on the mortgage, amount of monthly payment, origination fee, discount points, commitment fee and adjustments.

## PARTIES

3.      At all times hereinafter mentioned, Plaintiff GBML LLC was and is a single-purpose domestic limited liability company existing by virtue of the laws of the State of New York, with its principal place of business located at 2004 Ralph Avenue, Brooklyn, New York 11234.

4.      Defendant M2B Investors, Ltd. was and is a domestic corporation existing by virtue of the laws of the State of New York, with its principal place of business located at 4815 Avenue N, Brooklyn, New York 11234.

5.      Defendant M2B Investors, Ltd. owns real property in Kings County, New York, including the subject premises located at 4813 and 4815 Avenue N, Brooklyn, New York 11234.

6.      Upon information and belief, Abraham Podolsky was and is the Chief Executive Officer of Defendant M2B Investors, Ltd.

7.      Defendant Wall Street Mortgage Bankers, Ltd. was and is a domestic corporation existing by virtue of the laws of the State of New York, with its principal place of business located at 1010 Northern Boulevard, Suite 336, Great Neck, New York 11021, which is engaged in the business of brokering residential mortgage loans.

8.      Defendant Wall Street Mortgage Bankers, Ltd. routinely transacts business in Kings County, New York and maintains an active branch office at 4907 Avenue N, Brooklyn, New York 11234.

9.      Defendant Wall Street Mortgage Bankers, Ltd. operates and does business under numerous trade names, including but not limited to "Power Express Mortgage."

10.     At all times alleged herein, Defendant Wall Street Mortgage Bankers, Ltd. was and is a New York-licensed mortgage banker (NMLS #1324).

11.     Defendant Wall Street Mortgage Bankers, Ltd. was and is licensed to only transact residential mortgages in the State of New York.

12.     At all times alleged herein, Defendant Wall Street Mortgage Bankers, Ltd. was not licensed to transact commercial, business, or agricultural mortgages in the State of New York.

13.     Upon information and belief, Keith Kantrowitz was and is the Chief Executive Officer of Defendant Wall Street Mortgage Bankers, Ltd.

14.     Upon information and belief, Abraham Podolsky, Chief Executive Officer of Defendant M2B Investors, Ltd., had and still has a financial and other beneficial interest in co-Defendant Wall Street Mortgage Bankers, Ltd.

15.     Upon information and belief, Keith Kantrowitz, Chief Executive Officer of Defendant Wall Street Mortgage Bankers, Ltd., had and still has a financial and other beneficial interest in co-Defendant M2B Investors, Ltd.

16.     Upon information and belief, Defendant Wall Street Mortgage Bankers, Ltd. was receiving kickbacks and/or other financial benefits from Defendant M2B Investors, Ltd.

17.     Upon information and belief, Defendant Wall Street Mortgage Bankers, Ltd. was receiving kickbacks and/or other financial benefits from the subject transaction involving Plaintiff.

18.     Upon information and belief, Defendant M2B Investors, Ltd. was receiving kickbacks and/or other financial benefits from Defendant Wall Street Mortgage Bankers, Ltd.

## JURISDICTION AND VENUE

19.     This Court has subject matter jurisdiction over Plaintiff's federal claims pursuant to 28 U.S.C. § 1331, §1343, 12 U.S.C. §2607, and 12 C.F.R. § 1026.

20.     This Court has supplemental jurisdiction over Plaintiff's pendent state law claims pursuant to 28 U.S.C. § 1367.

21.     Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b) because the subject property is located in the Eastern District of New York and a substantial portion of the events giving rise to this complaint occurred within the Eastern District of New York.

## FACTS COMMON TO ALL CLAIMS:

22.     Following several months of extensive negotiations, on or about February 11, 2022, Plaintiff (hereinafter "Buyer") entered into a Contract of Sale (hereinafter "Contract") to purchase from Defendant M2B Investors Ltd. (hereinafter "Seller") the real property located at 4813 and 4815 Avenue N, Brooklyn, New York 11234, each property consisting of one to four residential units (hereinafter "Subject Premises") in two adjoining buildings.

23.     The Contract of Sale incorporated the notice requirements of the Real Estate Settlement Procedures Act (RESPA).

24.     The Contract of Sale states that it is a Residential Contract of Sale.

25.     The Contract of Sale set a closing date of on or about April 1, 2022.

26.     The Defendants advised Plaintiff to form a limited liability company and that the limited liability company be named as the buyer on the contract, deed and mortgage note, so that Defendant Wall Street Mortgage Brokers, Ltd. could make a residential mortgage loan, under the protection of RESPA and other federal laws.

27.     Plaintiff, a single purpose Limited liability Company, was created to purchase the subject premises and be named as the purchaser in the Contract of Sale.

28.     Pursuant to the Contract, the Seller agreed to sell and the Plaintiff agreed to purchase the Subject Premises for a purchase price of One Million Seven Hundred Thousand ($1,700,000.00) U.S. Dollars (the "Purchase Price").

29.     The Contract of Sale clearly indicated that it was for the acquisition of residential property and was contingent upon obtaining a residential mortgage loan. The contract did not call for nor was it contingent upon a business, commercial or agricultural loan. In fact, Paragraph 8(a) of the Contract of Sale expressly states that

> The obligation of Purchaser to purchase under this contract is conditioned upon issuance, on or before 60 days after a fully executed copy of this contract is given to Purchaser or Purchaser's attorney in the manner set forth in paragraph 25 or subparagraph 8(j) (the "Commitment Date"), of a written commitment from an Institutional Lender pursuant to which such Institutional Lender agrees to make a first *mortgage loan*, other than a VA, FHA or other governmentally insured loan, to Purchaser, at Purchaser's sole cost and expense, of $1,275,000.00 for a term of at least 40 years (or such lesser sum or shorter term as Purchaser shall be willing to accept) at the prevailing fixed or-adjustable rate of interest of 4.75%, interest only for years 1-10, and on other customary commitment terms, including borrower's option to pay down up to 20% of the principal balance per year without penalty (the "Commitment"). (Emphasis supplied)

30.     New York Banking Law § 590(1)(a) defines a "mortgage loan" as "a loan to a natural person made primarily for personal, family or household use, secured by either a mortgage or deed of trust on residential real property, any certificate of stock or other evidence of ownership in, and proprietary lease from, a corporation or partnership formed for the purpose of cooperative ownership of residential real property or, if determined by the superintendent by regulation, shall include such a loan secured by a security interest on a manufactured home."

31.     Defendants were aware that Plaintiff intended to occupy the Subject Premises for more than fourteen days during the ensuing twelve months and that the loan was primarily for personal purposes.

32.     Defendant M2B Investors Ltd., as Seller, agreed to deliver the Subject Premises, including the basement, broom clean and to seal off the first floor access between 4815 Avenue N, Brooklyn, New York (part of the Subject Premises) and 4817 Avenue N, Brooklyn, New York, an adjoining property also owned by Defendant M2B Investors Ltd. but not being sold as part of the subject transaction.

33.     Pursuant to the Rider to the Contract of Sale, Plaintiff was required to give Defendant M2B Investors Ltd. a ten-year lease for the second floor of 4815 Avenue N, at a below market rate, for said defendant's continued use of that space as its commercial office.

34.     Pursuant to the Rider to the Contract of Sale, Defendant M2B Investors Ltd. was required to deliver the Subject Premises free of all occupants.

35.     Further, Defendant M2B Investors Ltd. had expressed the desire to occupy a portion of the basement of the Subject Premises free of charge.

36.     Defendant M2B Investors Ltd. agreed to deliver the superintendent's residential apartment vacant so that the Plaintiff could offer the residential unit to its employee(s).

37.     Prior to, and in anticipation of, the closing of title, Defendant M2B Investors Ltd. did remove hundreds of boxes, items, and other elements from the basements of the Subject Premises, broom cleaned the premises, and closed the first floor access between 4815 Avenue N, Brooklyn, New York (part of the Subject Premises) and 4817 Avenue N, Brooklyn, New York, in partial performance of the Contract. Defendant M2B Investors Ltd. also made repairs and remedial measures of issues delineated on the engineer/inspection report.

6

38.     Subsequent to the contract signing, and in furtherance of consummating the transaction, Defendant M2B Investors Ltd. scheduled and granted access to the Subject Premises to Plaintiff and its engineer/inspector, appraiser, surveyor, and contractors on multiple occasions.

39.     Subsequent to the contract signing, and in furtherance of the transaction, Defendant M2B Investors Ltd. notified several of the premises occupants that the Subject Premises were being sold to the Plaintiff.

40.     Subsequent to the contract signing, and in furtherance of consummating the transaction, Defendant M2B Investors Ltd. notified the premises occupants that they would need to vacate certain parts of the Subject Premises and that Plaintiff would be buying the Subject Premises and moving in shortly.

41.     The Contract was contingent upon Plaintiff, as a consumer, securing a federally related mortgage commitment from Defendant Wall Street Mortgage Bankers, Ltd. d/b/a Power Express Mortgage (hereinafter "Lender") which, upon information and belief, is partially owned and controlled by the same principal(s) of Defendant M2B Investors Ltd., namely Abraham Podolsky and Keith Kantrowitz.

42.     Plaintiff promptly applied for a mortgage via a Uniform Residential Application with the Defendant Wall Street Mortgage Bankers, Ltd. seeking 75% financing and was duly diligent and fully cooperative with the application and underwriting process. As a result, a firm mortgage commitment in the amount of One Million Two Hundred and Seventy-Five Thousand ($1,275,00.00) Dollars was obtained by Plaintiff from Defendant Lender.

43.     Pursuant to the Contract, Defendant M2B Investors Ltd. had agreed to provide Plaintiff with a mortgage loan rate that would be locked in at 4 ¾ %, but then tried to alter the rate to 5 ⅜ %, so they could receive a greater financial benefit.

7

44.     Shortly after Plaintiff applied, as a personal consumer, for a residential mortgage with defendant Lender, said defendant advised Plaintiff that it would not be able to honor the 4¾% interest rate negotiated in the Contract and stated the best rate possible at that time would be 5%.

45.     Defendant Lender failed to issue a locked-in loan commitment, although it represented to Plaintiff that it had locked in a rate of 5%.

46.     Defendant Lender issued a federally related mortgage loan commitment to the plaintiff for the purpose of purchasing and/or improving the Subject Premises, which is defined by the NYC Building Department as a 1-4 family property.

47.     While a residential federally related mortgage loan commitment was issued, said commitment did not contain the material terms of the loan, including the loan interest rate, the amount of the monthly payment, the amount of the loan origination fee, the total of discount points, the amount of the loan commitment fee, adjustment caps, the lifetime adjustment cap, and the amount to be retained in escrow.

48.     The mortgage documents, including the uniform residential application form, disclosure forms, appraisal forms, RESPA forms, and commitment forms were drafted, generated and filled-out by Defendant Wall Street Mortgage Broker, Ltd., indicated that the subject loan was for a residential property subject to the protections afforded by RESPA and other federal statutes, and were disseminated by Defendant Wall Street Mortgage Broker, Ltd., for borrower's signature. These documents were pre-filled by Defendant Wall Street Mortgage Broker, Ltd., and not by GBML or Philip Hines.  In many of these documents, the Defendant Wall Street Mortgage Broker, Ltd. delineated their Nationwide Multistate Licensing System & Registry (NMLS) Number, thereby identifying the loan application as for a consumer residential loan subject to RESPA and federal law.

49.     All of the aforementioned documents stated that Defendant Wall Street Mortgage Broker, Ltd. was providing a residential consumer loan for the subject premises, with most of said documents containing its NMLS number, which number would only appear on consumer federally related mortgages, as opposed to commercial, investment or business loan documents (for which loans Defendant Wall Street Mortgage Brokers, Ltd. was not licensed).

50.     In further performance under the Contract, Plaintiff conducted, with the express knowledge and consent of Defendant M2B Investors Ltd., an engineer's inspection, an appraisal, and a survey. In fact, it was Defendant Lender, working with co- Defendant M2B Investors Ltd., that recommended and hired the appraiser on behalf of Plaintiff. In preparation for closing, Plaintiff retained and paid for the services of an appraiser, engineer, surveyor, etc.

51.     Pursuant to the Contract, Plaintiff provided the engineer's report, appraisal report, and survey to Defendants.

52.     The Contract was delivered by Defendants to Plaintiff and its agents.

53.     Defendant M2B Investors Ltd. delivered the countersigned fully-executed Contract to Plaintiff's mortgage lender, Defendant Wall Street Mortgage Bankers, Ltd.

54.     Defendant M2B Investors Ltd. also delivered the countersigned fully-executed Contract to Plaintiff's appraiser, who was recommended and engaged by Defendant Wall Street Mortgage Bankers, Ltd.

55.     The appraiser expressly represented in his report that "There is currently a *fully executed* [emphasis added] sales contract in place for the subject, dated 2-22-2022 for $1,700,000 between the seller: M2B Investors Ltd. And [sic] GBML LLC."

56.     Pursuant to the mortgage commitment issued by Defendant Wall Street Mortgage Bankers, Ltd., the escrow at closing was subject to RESPA and other federal laws.

57.     Pursuant to the mortgage commitment issued by Defendant Wall Street Mortgage Bankers, Ltd., Plaintiff was entitled to a copy of the appraisal report, as required by RESPA and other federal laws demonstrating that this loan was a RESPA loan.

58.     Pursuant to the mortgage commitment issued by Defendant Wall Street Mortgage Bankers, Ltd., as a condition precedent to closing, Plaintiff was to receive a Closing Disclosure statement at least 3 days prior to closing, in compliance with RESPA and other federal laws. A closing disclosure is not required nor provided for non-RESPA loans.

59.     Pursuant to the mortgage commitment issued by Defendant Wall Street Mortgage Bankers, Ltd., Plaintiff GBML was to be named on the mortgage, note and deed, as borrower and owner.

60.     Pursuant to the Contract, title closing was scheduled to take place on or about April 1, 2022.

61.     On or about April 1, 2022, Defendant M2B Investors Ltd. did willfully refuse to proceed to closing on the Subject Premises and has refused to close title to date. No valid legal reason has been given for said refusal and, upon information and belief, Defendant M2B Investors Ltd. has no intention to proceed to closing in the future.

62.     Following Defendant M2B Investors Ltd.'s refusal to close title, Defendant M2B Investors Ltd. offered to reimburse Plaintiff's expenses incurred in the ill-fated transaction; however, Defendant M2B Investors Ltd. has failed to reimburse Plaintiff for any losses or expenses related to the subject transaction.

63.     Prior to commencing this action, Plaintiff repeatedly attempted to engage with Defendant M2B Investors Ltd. concerning the above state of affairs, without receiving any meaningful response.

64.     Defendant M2B Investors Ltd. is in breach of the Contract and other agreements with Plaintiff.

65.     Defendant M2B Investors Ltd. has willfully refused to cure the breach of Contract and other agreements with Plaintiff.

66.     Defendant M2B Investors Ltd. has impermissibly and without reason or justification breached the Contract by willfully refusing to close title on the Subject Premises, despite performance being made by Plaintiff and both Defendants.

67.     Plaintiff remains ready, willing, and able to close title pursuant to the terms of the Contract.

68.     Both Defendants have willfully breached the portion of the Contract requiring a mortgage loan rate of 4 ¾ %. No reason has been given for said breach.

69.     Upon information and belief, Defendants do not intend to honor the requisite mortgage loan rate of 4 ¾ %.

70.     Plaintiff has communicated with Defendant Lender, through its principal Keith Kantrowitz and agents, concerning Lender's failure to deliver and lock-in the promised mortgage loan rate of 4 ¾ %, without receiving any meaningful response.

71.     Defendants are in breach of contract for failing to deliver a mortgage commitment at the rate of 4 ¾ %.

72.     Defendants have willfully refused to cure the breach by locking-in a mortgage loan rate of 4 ¾ % and issuing a commitment for same.

73.     Defendants have impermissibly and without reason or justification breached the Contract by willfully refusing to lock-in the mortgage loan rate at 4 ¾ %, despite full performance by Plaintiff.

74.     As Plaintiff's good faith attempts to close title pursuant to the terms of the Contract have been willfully frustrated, rejected, and ignored by Defendants, as have been Plaintiff's good faith attempts to resolve the issue of the lock-in rate, the within lawsuit ensues.

## AS AND FOR A FIRST CAUSE OF ACTION AGAINST BOTH DEFENDANTS FOR SPECIFIC PERFORMANCE

75.     Plaintiff repeats and reiterates each of the above numbered paragraphs as if fully set forth herein.

76.     Plaintiff is ready, willing and able to close title on the Subject Premises pursuant to the terms of the Contract.

77.     Defendants have repeatedly and willfully refused to comply with the terms of the Contract.

78.     The Subject Premises are a unique property.

79.     The Subject Premises' location, condition, and floorplan cannot be replaced with another property.

80.     Plaintiff cannot be adequately compensated for the loss of the Subject Premises by monetary damages if the Defendants refuse to honor the Contract and close title to the Subject Premises.

81.     The Plaintiff does not have an adequate remedy at law.

82.     Due to the foregoing, the Plaintiff is entitled to a judgment of this Court granting the Plaintiff specific performance with respect to closing on the Subject Premises.

83.     Due to the foregoing, Plaintiff is entitled to a judgment of this Court granting Plaintiff specific performance with respect to a mortgage loan rate of 4 ¾ %.

84.     Defendants should be directed to set a closing date for the sale of the Subject Premises and to convey the Subject Premises to the Plaintiffs in full compliance with the Contract.

## AS AND FOR A SECOND CAUSE OF ACTION AGAINST BOTH DEFENDANTS FOR BREACH OF CONTRACT

85.     Plaintiff reiterates and realleges each of the above numbered paragraphs as if fully set forth herein.

86.     As set forth above, Defendants have willfully and materially breached the Contract and their other agreements with Plaintiff

87.     Defendants have willfully and materially defaulted under the Contract and their other agreements with Plaintiff.

88.     Plaintiff has fulfilled its obligations pursuant to the Contract necessary to close title.

89.     Due to the foregoing, and in the event that specific performance is not granted, Plaintiff is entitled to an award of monetary damages, attorney's fees, expenses, and costs in an amount to be determined by the trier of fact, including the cost of an engineering report; the cost of a surveyor's report; the cost of an appraisal; the cost of contractors; the cost of title services; the cost of closing services; the increased cost and interest rates of obtaining a mortgage in the future; the cost of continuing to pay rent and increases in rent due to being unable to occupy the Subject Premises; the costs of plaintiff's time; the costs of credit repair; emotional distress; loss of time, and inconvenience, all in an amount to be determined by the trier of fact.

## AS AND FOR A THIRD CAUSE OF ACTION AGAINST BOTH DEFENDANTS FOR FRAUD

90.     Plaintiff repeats and realleges each of the above numbered paragraphs as if fully set forth herein.

91.     Defendants committed numerous acts of fraud, concealment, and intentional omission.

92.     Throughout the day-to-day communications between Plaintiff and Defendants in moving the transaction forward, Defendants regularly and routinely stated and indicated by their actions that they intended to close title on the Subject Premises. In fact, it was not until Defendant Lender advised Plaintiff and Defendant M2B Investors, Ltd., on or about March 30, 2022, that the closing would need to occur by April 1, 2022 that Defendant M2B Investors, Ltd. stated it would not be willing to close title.

93.     Defendant Lender failed to provide Plaintiff with a standardized Closing Disclosure at least 3 business days before the closing.

94.     Defendant Lender failed to provide Plaintiff with the material terms of the mortgage, including but not limited to the interest rate on the mortgage.

95.     Defendants failed to disclose in writing the financial and ownership relationships between the principals of the defendants acting as lender, broker, and seller.

96.     Defendants failed to disclose in writing that the principals of the defendants owned both the Subject Premises and the lending institution.

97.     Plaintiff did not learn of the financial and other beneficial interests the defendants and/or their principals had with each other until after the date upon which the closing was to occur.

98.     Defendant Lender held itself out to be a consumer residential mortgage banker that was authorized to issue a mortgage necessary and compliant in closing on the Subject Premises.

99.     Defendant Lender failed to disclose that they only lend on residential properties and that it does not handle properties that may be considered commercial or mixed-use property.

100.     Defendant Lender intentionally kept changing the purported "locked-in" mortgage interest rate so as to financially benefit and enlarge the profit for themselves and at the additional cost and expense to Plaintiff.

101.    Defendants changed the conditions set forth in the commitment letter as a pretext to getting out of the Contract and/or loan commitment.

102.    Defendants intentionally failed to promptly deliver the countersigned Contract of Sale to Plaintiff in order to take advantage of Plaintiff and hold it hostage to predatory terms and conditions.

103.    Defendants failed to disclose conflicts of interest in acting as the owner of the Subject Premises and the lender for Plaintiff.

104.    Defendants never received a waiver from Plaintiff as to their inherent conflicts of interest in the instant matter.

105.    Defendant M2B Investors, Ltd. did not intend to close title on the Subject Premises at the inception of the Contract.

106.    Defendant M2B Investors, Ltd. did not intend to close title on the Subject Premises at all times prior to it refusing to close on or about April 1, 2022.

107.    Plaintiff expended significant sums of money for an appraisal, survey, title, engineering report, contractors, NYS filing fees, publishing fees and other items, in reliance upon Defendants' representation that they were ready, willing and able to close on the Subject Premises in a timely fashion and in accordance with the Contract.

108.    Defendants misrepresented to Plaintiff that it intended to and was capable of closing title on the Subject Premises in accordance with the terms of the Contract.

109.    Defendant M2B Investors, Ltd. knew of the falsity of the above-mentioned misrepresentations at the time they were made to Plaintiff, as evidenced by its sudden, unwarranted, and unexplained refusal to close title on the Subject Premises.

110.    Defendant M2B Investors, Ltd. intended to induce the reliance of the Plaintiff upon the abovementioned misrepresentations by way of their entering into a Contract with Plaintiff.

111.    Plaintiff justifiably relied upon the above-mentioned misrepresentations of Defendant M2B Investors, Ltd. by virtue of the Contract into which they had entered.

112.    Defendants concealed their wrongdoing from Plaintiff and never revealed it to Plaintiff.

113.    The above constitutes fraud on the part of Defendants, individually and collectively.

114.    Defendants did not intend to lock-in the mortgage loan rate at 4 ¾ % at the inception of the Contract.

115.    Defendants did not intend to lock-in the mortgage loan rate at 4 ¾ % at any time prior to Defendant M2B Investors, Ltd. refusing to close on or about April 1, 2022.

116.    Plaintiff expended sums of money for an appraisal, survey, title, engineering report, contractors, NYS filing fees, publishing fees, and other items, in reliance upon Defendants' representations that they were ready, willing, and able to close on the Subject Premises at a locked-in rate of 4 ¾ % and in a timely fashion accordance with the Contract.

117.    Defendant Lender misrepresented to Plaintiff that it intended to and was capable of closing on the Subject Premises at a locked-in rate of 4 ¾ % in accordance with the terms of the Contract.

118.    Defendants knew of the falsity of the above-mentioned misrepresentations at the time they were made to Plaintiff as evidenced by their sudden, unwarranted, and unexplained refusal to close on the Subject Premises at a locked-in rate of 4 ¾ %.

119.    Defendants intended to induce the reliance of the Plaintiff upon the abovementioned misrepresentations by way of their entering into a Contract with Plaintiff.

120.    Plaintiff justifiably relied upon the above-mentioned misrepresentations of Defendants by virtue of the Contract into which they had entered and the definitive steps taken by Plaintiff to further the cause of the Contract and closing.

121.    Defendants concealed their wrongdoing with respect to the rate lock from Plaintiff and never revealed it to Plaintiff until after Defendant M2B Investors, Ltd. refused to close title.

122.    The above constitutes fraud on the part of both Defendants.

123.    Due to the foregoing, Plaintiff has been damaged and Plaintiff is entitled to an award of monetary damages, attorney's fees, expenses, and costs in an amount to be determined by the trier of fact, including the cost of an engineering report; the cost of a surveyor's report; the cost of an appraisal; the cost of contractor services; the cost of title services; the cost of closing services; the cost to create the single member LLC; the cost to publish; the increased cost and interest rates of obtaining a mortgage in the future; the cost of continuing to pay rent and increases in rent due to being unable to occupy the Subject Premises; loss of income; the costs of credit repair; emotional distress; loss of time, and inconvenience, in an amount to be determined by the trier of fact.

## AS AND FOR A FOURTH CAUSE OF ACTION AGAINST BOTH DEFENDANTS FOR MISREPRESENTATION

124.    Plaintiff repeats and realleges each of the above numbered paragraphs as if fully set forth herein.

125.    A special, privity-like relationship existed between Defendants and Plaintiff by virtue of the contract among them, imposing a duty upon Defendants to impart correct truthful and honest information to Plaintiff. Further, a fiduciary relationship existed between Plaintiff and Defendant Lender by virtue of the relationship between broker/lender and borrower.

126.    As set forth above, Defendants made a number of misrepresentations and omissions of material facts to the Plaintiff.

127.    Defendant M2B Investors, Ltd. consistently, on countless occasions, knowingly misrepresented to Plaintiff that it was ready, willing, and able to close title on the Subject Premises.

128.    Defendants consistently, on countless occasions, knowingly misrepresented to Plaintiff that it was ready, willing, and able to close title on the Subject Premises in accordance with the terms of the Contract, including providing a loan at a locked-in rate of 4 ¾ %.

129.    Defendant Lender knowingly misrepresented to Plaintiff that it was able to deliver and lock-in a mortgage interest rate of 4 ¾ %.

130.    Defendant Lender knowingly misrepresented to Plaintiff that it was able to deliver and lock-in a mortgage interest rate of 5 %.

131.    Defendant Lender knowingly misrepresented to Plaintiff that it was able to deliver and lock-in a mortgage interest rate of 5 ⅜ %.

132.    Defendant Lender knowingly misrepresented to Plaintiff that the loan for which Plaintiff applied was subject to RESPA and federal law.

133.    Defendant Lender knowingly misrepresented to Plaintiff that it was able to deliver a loan in compliance with RESPA and federal law.

134.    Plaintiff reasonably relied upon Defendants' representations, including but not limited to those alleged herein, to its detriment.

135.    The above constitutes misrepresentation of material facts on the part of Defendants.

136.    Due to the foregoing, Plaintiff has been damaged and is entitled to an award of monetary damages, attorney's fees, expenses, and costs in an amount to be determined by the trier of fact, including the cost of an engineering report; the cost of a surveyor's report; the cost of an

appraisal; the cost of contractors; the cost of title services; the cost of closing services; ; the cost to create the single member LLC; the cost to publish; the increased cost and interest rates of obtaining a mortgage in the future; the cost of continuing to pay rent and increases in rent due to being unable to occupy the Subject Premises; the costs of plaintiff's time and loss of income; the costs of credit repair; emotional distress; loss of time, and inconvenience, in an amount to be determined by the trier of fact.

## AS AND FOR A FIFTH CAUSE OF ACTION AGAINST BOTH DEFENDANTS FOR BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING

137. Plaintiff repeats and realleges each of the above numbered paragraphs as if fully set forth herein.

138. Every contract executed or performed in the State of New York, whether written or oral, explicit or implied, includes an implied covenant of good faith and fair dealing.

139. By virtue of the conduct described above, Defendants acted in bad faith in that their acts and omissions alleged herein injured Plaintiff, depriving Plaintiff of the benefits of the Contract and loan.

140. By virtue of the conduct described above, Defendants have breached the covenant of good faith and fair dealing.

141. Due to the foregoing, Plaintiff has been damaged and is entitled to an award of monetary damages, attorney's fees, expenses, and costs in an amount to be determined by the trier of fact, including the cost of an engineering report; the cost of a surveyor's report; the cost of an appraisal; the cost of contractors; the cost of title services; the cost of closing services; the cost to create the single member LLC; the cost to publish; the increased cost and interest rates of obtaining a mortgage in the future; the cost of continuing to pay rent and increases in rent due to being unable

to occupy the Subject Premises; loss of income; the costs of credit repair;  emotional distress; loss of time, and inconvenience, in an amount to be determined by the trier of fact.

### AS AND FOR A SIXTH CAUSE OF ACTION AGAINST DEFENDANT M2B INVESTORS LTD. FOR UNJUST ENRICHMENT

142.    Plaintiff repeats and realleges each of the above numbered paragraphs as if fully set forth herein.

143.    Defendant M2B Investors, Ltd. has received the benefit of an engineering report for the Subject Premises, for which Plaintiff has paid.

144.    Defendant M2B Investors, Ltd. has received the benefit of an appraisal of the Subject Premises, for which Plaintiff has paid.

145.    Plaintiff made payment to the appraiser which is affiliated, referred by, owned and controlled by Defendant M2B Investors, Ltd.

146.    Defendant M2B Investors, Ltd. has received the benefit of a land survey of the Subject Premises, for which Plaintiff has paid.

147.    Defendant M2B Investors, Ltd. has received the benefit of a title report for the Subject Premises, for which Plaintiff has paid.

148.    It is against equity and good conscience for Defendant M2B Investors, Ltd. to retain said enrichment, namely, an engineering report, an appraisal, and a land survey, which enrichment was obtained by fraud and misrepresentation.

149.    The above constitutes unjust enrichment on the part of Defendant M2B Investors, Ltd.

150.    Due to the foregoing, Plaintiff has been damaged and is entitled to an award of monetary damages, attorney's fees, expenses, and costs in an amount to be determined by the trier of fact.

<u>**AS AND FOR A SEVENTH CAUSE OF ACTION AGAINST BOTH DEFENDANTS FOR**</u>
<u>**VIOLATION OF REAL ESTATE SETTLEMENT PROCEDURES ACT (RESPA),**</u>
<u>**12 U.S.C. §§ 2601 *et seq*.**</u>

151.    Plaintiff repeats and realleges each of the above numbered paragraphs as if fully set forth herein.

152.    The subject federally related mortgage loan was to be secured by the Subject Premises – a mixed-use property comprised of four residential units and one commercial units.

153.    The mortgage disclosure documents and mortgage loan were explicitly subject to the Real Estate and Settlement Procedures Act ("RESPA"), 12 U.S.C. §§ 1261 *et seq.*, which required Defendant Wall Street Mortgage Bankers Ltd., as lender, mortgage broker, and the servicer of the loan to provide disclosures to Plaintiff concerning real estate transactions, settlement services, and consumer protection laws.

154.    Defendants share common officers, including but not limited to Keith Kantrowitz, Abraham Podolsky, and are otherwise financially intertwined and/or related in interest.

155.    Defendants violated RESPA in that they:

   a.   Intended to give a portion, split, or percentage of charges made or received for the rendering of a real estate settlement service in connection with a transaction involving a federally related mortgage loan other than for services actually performed, in violation of 12 U.S.C. § 2607 and 24 C.F.R. §3500.14(c);

   b.   Failed to provide Plaintiff with the required disclosures prior to the consummation of the transaction, in violation of 12 U.S.C. § 2607;

   c.   Failed to make the required disclosures clearly and conspicuously in writing, in violation of 12 U.S.C. § 2607;

d.  Failed to properly and accurately disclose the amount financed, in violation of 12 U.S.C. § 2607;

e.  Failed to properly and accurately disclose the amount of any finance charge fees payable to third parties that were not bona fide or reasonable in amount, in violation of 12 U.S.C. § 2607;

f.  Failed to disclose clearly and conspicuously in writing the interest charged on the mortgage;

g.  Failed to disclose the total amount of payments charged to the Defendant over the life of the loan;

h.  Failed to disclose to Plaintiff the correct status of the loan via Lender's web portal and in communications with Plaintiff;

i.  Failed to disclose to Plaintiff that a commitment was issued;

j.  Failed to properly reflect the correct type of property in the mortgage application;

k.  Failed to properly reflect the correct type of property in the commitment letter;

l.  Failed to properly reflect in the commitment letter that the Plaintiff was purchasing two separate properties and they were not legally combined;

m.  Intentionally added conditions to the commitment letter as a pretext to get out of the Contract of Sale;

n.  Intended to get a financial benefit, including a lease back of a portion of the subject premises at a below market rate, and basement space free of charge, with a transaction involving a federally related mortgage loan other than for

services actually performed, in violation of 12 U.S.C. § 2607 and 24 C.F.R. §3500.14(c);

o.  Failed to provide a Lending Disclosure and a Closing Disclosure in violation of 12 U.S.C. § 2607; and

p.  Failed to provide a proper commitment letter.

156.  To the extent Defendants each failed to make the disclosures required by RESPA to Plaintiff, including 12 U.S.C. § 2607(c)(4), such that when a settlement service provider involved in a RESPA-covered transaction refers the borrower to a provider with whom the referring party has an ownership or other beneficial interest, a Controlled Business Arrangement (CBA) Disclosure is required, the Defendants are in violation of RESPA.

157.  By virtue of the failure of Defendants to expressly describe the business arrangement that exists between the two and give Plaintiff an estimate of charges, Defendants are in violation of RESPA.

158.  By virtue of the requirement by Defendant M2B Investors Ltd. that Plaintiff use Defendant Lender to secure a mortgage loan commitment, Defendant M2B Investors Ltd. is in violation of RESPA.

159.  By virtue of the failure of Defendant Lender to provide a definite interest rate and term of loan, the defendants are in violation of RESPA.

160.  Defendants are liable to Plaintiff for actual damages, treble damages, costs and disbursements, and attorney's fees as aforesaid.

161.  Due to the foregoing, the plaintiff suffered emotional distress.

## AS AND FOR A EIGHTH CAUSE OF ACTION AGAINST DEFENDANT WALL STREET MORTGAGE BANKERS, LTD. FOR VIOLATION OF THE TRUTH IN LENDING ACT, REGULATION Z, 12 C.F.R. § 1026.

162.    Plaintiff repeats and realleges each of the above numbered paragraphs as if fully set forth herein.

163.    Defendant Wall Street Mortgage Bankers, Ltd., as a lender, is required to comply with 12 CFR § 1026.

164.    Defendant Lender was required to deliver to Plaintiff a Loan Estimate or place same in the mail to Plaintiff no later than the third business day after receipt of the consumer's "application" for a mortgage loan subject to the TRID Rule, 12 C.F.R. §1026.19. Defendant Lender failed to do so.

165.    Defendant Lender also failed to make the disclosures clearly and conspicuously in writing, in a form that the consumer Plaintiff may keep, in violation of the TRID Rule, 12 C.F.R. §1026.19.

166.    Defendant Lender failed to disclose the mortgage interest rate, costs at closing, taxes, insurance and assessment costs, projected range of payments, and loan terms, in violation of in violation of the TRID Rule, 12 C.F.R. §1026.

167.    On March 30, 2022, Defendant Lender informed Plaintiff that it had cleared the file to close and that the closing would have to take place no later than Friday April 1, 2022, or the rate lock would end. Notwithstanding the late notice, Plaintiff was ready, willing, and able to close title on April 1, 2022.

168.    Up to and including March 30, 2022, Defendant Lender never provided Plaintiff with a commitment letter, never indicated when the rate lock would end, and never put into writing any terms of the mortgage.

169.     Defendant Lender did not provide Plaintiff with the standardized Closing Disclosure within three days prior to the April 1, 2022 closing date.

170.     Defendant Lender has never provided Plaintiff with the standardized Closing Disclosure.

171.     Defendant Lender violated the TRID Rule, 12 CFR §1026.19(e)(1)(iii).

172.     Defendant Lender violated Regulation Z of the Truth and Lending Act.

173.     Defendant Lender is liable to Plaintiff for actual and statutory damages, interest, statutory interest, costs and disbursements, and attorney's fees as aforesaid.

174.     Due to the foregoing, the plaintiff suffered emotional distress.

## AS AND FOR A NINTH CAUSE OF ACTION AGAINST DEFENDANT M2B INVESTORS LTD. FOR VIOLATION OF THE FOREIGN INVESTMENT IN REAL PROPERTY TAX ACT (FIRPTA), 12 U.S.C. § 1445.

175.     Plaintiff repeats and realleges each of the above numbered paragraphs as if fully set forth herein.

176.     The Foreign Investment in Real Property Tax Act (FIRPTA), 12 U.S.C. § 1445 (a) provides that "Except as otherwise provided in this section, in the case of any disposition of a United States real property interest (as defined in section 897(c)) by a foreign person, the transferee [buyer] shall be required to deduct and withhold a tax equal to 15 percent of the amount realized on the disposition".

177.     The Contract of Sale provided at ¶ 16(c) that:

> The delivery by Seller to Purchaser of a certificate stating that the Seller is not a foreign person, which certificate shall be in the form then required by FIRPTA or a withholding certificate from I.R.S. If Seller fails to deliver the aforesaid certificate or if Purchaser is not entitled under FIRPTA to rely on such certificate, Purchaser shall deduct and withhold from the purchase price a sum equal to 10% thereof (or any lesser amount permitted by law) and shall at closing remit the withheld amount with the required forms to the Internal Revenue Service.

25

178.   The Rider to the Contract of Sale provided at ¶ 1 that:

> If the sale consideration is $300,000 or more, Seller shall sign an affidavit in accordance with Section 1445 of the Internal Revenue Code furnishing to transferee, the transferor's U.S. taxpayer identification number and stating that the transferor is not a foreign person (if an individual). Or [sic] in the case of a disposition of an interest in a domestic corporation, the domestic corporation shall furnish to the transferee an affidavit stating that it is not, and has not been a U.S. real property holding corporation during the base period specified in the IRC Section 897.

179.   By virtue of the above, the parties to the Contract of Sale agreed to the applicability of FIRPTA, 12 U.S.C. § 1445, to the subject transaction.

180.   Defendant M2B Investors Ltd. failed to provide a certificate stating that it was not a foreign person.

181.   Defendant M2B Investors Ltd. failed to provide a withholding certificate from the Internal Revenue Service.

182.   Defendant M2B Investors Ltd. failed to provide an affidavit, pursuant to § 1445 of the Internal Revenue Code, providing its taxpayer identification number and a statement that it is not a foreign person.

183.   Defendant M2B Investors Ltd. failed to provide an affidavit stating that it is not a United States real property holding corporation

184.   As a result of the above, Defendant M2B Investors Ltd. has violated FIRPTA.

185.   As a result of the above, Plaintiff has been denied the protection afforded it under FIRPTA that the provision of such documents as listed above by Defendant M2B Investors Ltd. would have provided and created financial liability to the Plaintiff.

186.   Defendant M2B Investors Ltd. is liable to Plaintiff for actual and statutory damages, interest, statutory interest, costs and disbursements, and attorney's fees as aforesaid.

**AS AND FOR A TENTH CAUSE OF ACTION AGAINST DEFENDANT WALL STREET MORTGAGE BANKERS, LTD. FOR VIOLATION OF THE SECURE AND FAIR ENFORCEMENT FOR MORTGAGE LICENSING ACT (S.A.F.E. MORTGAGE LICENSING ACT OF 1980), 12 U.S.C. §§ 1501, *et seq.***

187.    Plaintiff repeats and realleges each of the above numbered paragraphs as if fully set forth herein.

188.    The Secure and Fair Enforcement for Mortgage Licensing Act (S.A.F.E. Mortgage Licensing Act Of 1980), 12 U.S.C. §§ 1501, *et seq.* (the SAFE Act) is a remedial statute, designed and enacted to enhance *consumer* protection and reduce fraud by encouraging states to establish minimum standards for the licensing and registration of state-licensed mortgage loan originators and for the Conference of State Bank Supervisors (CSBS) and the American Association of Residential Mortgage Regulators (AARMR) to establish and maintain a nationwide mortgage licensing system and registry for the residential mortgage industry.

189.    Among the aims of the SAFE Act are increased accountability of mortgage loan originators and establishing a means by which residential mortgage loan originators would, to the greatest extent possible, be required to act in the best interests of the consumer.

190.    Defendant Wall Street Brokers Ltd. violated the SAFE Act by, *inter alia*, failing to include its NMLS number on all of the loan commitment documents.

191.    Defendant Wall Street Brokers Ltd. violated the SAFE Act by, *inter alia*, failing to act in the best interests of the consumer.

192.    As a result of the above, Defendant Wall Street Brokers Ltd. has violated the SAFE Act.

193.    As a result of the above, Plaintiff has been denied the protection afforded it under the SAFE Act.

194.    Defendant Wall Street Brokers Ltd. is liable to Plaintiff for actual and statutory

damages, interest, statutory interest, costs and disbursements, and attorney's fees as aforesaid.

## AS AND FOR AN ELEVENTH OF ACTION AGAINST DEFENDANT WALL STREET MORTGAGE BANKERS, LTD. FOR VIOLATION OF THE NEW YORK STATE BANKING LAW, §§ 589, *et seq.*

195.    Plaintiff repeats and realleges each of the above numbered paragraphs as if fully set

forth herein.

196.    Defendant Wall Street Brokers Ltd. violated the New York State Banking Law,

§§589, *et seq.*, by, *inter alia*, violating §595-a by:

> (1)(a) The misrepresentation of material facts or the making of false promises likely to influence, persuade, or induce an applicant for a mortgage loan or mortgagor to take a mortgage loan, or pursuing a course of misrepresentation or false promises through agents or otherwise;

> (1)(b) The misrepresentation, or concealment of any material factors, terms or conditions of a transaction to which he is a party, including the receipt of payment from a third party, pertinent to an applicant for a mortgage loan or a mortgagor;

> (1)(f) Engaging in any transaction, practice, or course of business which operates a fraud upon any person in connection with the purchase or sale of any mortgage loan.

197.    Defendant Wall Street Brokers Ltd. violated the New York State Banking Law,

§§589, *et seq.*, by, *inter alia*, violating §595-a by failing to comply with the following:

> (3)(a) Each mortgage broker, mortgage banker and exempt organization shall provide to each applicant for a mortgage loan at or before the time of application a disclosure of the fees payable at the time of application and the conditions under which such fees may be refundable, and such other disclosures as shall be required by the superintendent of financial services;

> (3)(b) Each mortgage banker and exempt organization shall make available to each applicant for a mortgage loan at or before the time a commitment to make a mortgage loan is given a written disclosure, the fees to be paid in connection with the commitment and the loan, or the manner in which such fees shall be determined and the conditions under which such fees may be

28

refundable, and such other disclosures as may be required by the superintendent of financial services; and

(3)(c)  In each lock-in agreement it shall issue, every mortgage banker and exempt organization shall include a list of all documents typically required to be produced and conditions typically required to be satisfied for closing of a mortgage loan based on information provided by the applicant.   In each commitment it shall issue, every mortgage banker and exempt organization shall include a list of all documents foreseeably required to be produced and conditions foreseeably required to be satisfied for closing of a mortgage loan based on information provided by the applicant. In addition, no later than twelve business days prior to the expiration of any lock-in period or commitment period, a mortgage banker or exempt organization shall mail to each applicant for a mortgage loan a notice indicating the date of such expiration together with a request that the applicant contact the lender immediately to discuss the conditions precedent to the closing of such loan.

198.    Defendant Wall Street Brokers Ltd. violated the New York State Banking Law, §§589, *et seq.*, by, *inter alia*, violating §599-p by failing to comply with the following:

The unique identifier of any person originating a residential mortgage loan shall be clearly shown on *all* [emphasis added] residential mortgage loan application forms, solicitations or advertisements, including business cards or websites, and any other documents as established by rule, regulation or order of the superintendent.

199.    As a result of the above, Defendant Wall Street Brokers Ltd. has violated the New York State Banking Law, §§589, *et seq.*

200.    As a result of the above, Plaintiff has been denied the protection afforded it under the New York State Banking Law, §§589, *et seq.*

201.    Defendant Wall Street Brokers Ltd. is liable to Plaintiff for actual and statutory damages, interest, statutory interest, costs and disbursements, and attorney's fees as aforesaid.

Plaintiff hereby demands a trial by jury of all issues in this matter.

**WHEREFORE**, Plaintiff demands judgment be entered against Defendants, jointly and severally, as to each of the causes of action set forth herein, together with any and all further relief that this Court deems just and proper.

Dated: Brooklyn, New York
       November 17, 2022

                                        Yours, etc.,

                                        **HELD & HINES, L.L.P.**

                                        */s/ Marc J. Held*_____
                                        By: Marc J. Held, Esq.
                                        *Attorneys for Plaintiff*
                                        Office and P.O. Address
                                        2004 Ralph Avenue
                                        Brooklyn, New York 11234
                                        (718) 531-9700